Kidane ZEWDE, Appellant

v.

Lemlem Welday ABADI, Appellee

NO. 14-16-00536-CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed August 10, 2017

Lemlem Welday Abadi, Janet M. Heppard, Diane M. McManus, Houston, TX, for Appellee.

Kidane Zewde, Houston, TX, for Appellant.

Panel consists of Justices Boyce, Jamison, and Brown.

## OPINION

Martha Hill Jamison, Justice

Kidane Zewde appeals from the trial court's final decree of divorce dissolving his marriage to Lemlem Welday Abadi.[1] A key focus of Kidane's case below was his contention that because Abadi's prior marriage to another man in her homeland of Eritrea was never lawfully dissolved, Abadi's marriage to Kidane was not a valid marriage. The trial court rejected this contention, dissolved the marriage between Kidane and Abadi, and awarded Abadi primary custody of their minor child. In eight issues on appeal, Kidane challenges the trial court's determination regarding the validity of the marriage and award of primary custody to Abadi. We affirm.

### I. Background

Kidane and Abadi were married on January 2, 2014. Their son was born on June 17, 2014. On February 13, 2015, Kidane filed an Original Petition to Declare Marriage Void, asserting that Abadi's prior marriage in Eritrea to Italian citizen Emilio Carbonetti was never properly dissolved; thus, according to Kidane, his and Abadi's subsequent marriage was void. Abadi subsequently filed a counter-petition for divorce.

The trial court bifurcated the bench trial proceedings, hearing and deciding the marriage validity issue on February 15, 2016, and hearing and deciding the divorce-related issues on May 11, 2016. Kidane was represented by counsel at the first phase of trial but represented himself pro se during the second phase of trial. Kidane has filed his appeal pro se.

During trial of the marriage validity issue, Abadi testified that she married Carbonetti in Eritrea in March 2002, they have two children together, and they were legally separated in an Italian court proceeding in 2009. The Italian court also ordered Carbonetti to pay child support to Abadi. Abadi subsequently initiated pro se divorce proceedings in Eritrea in 2013. The record contains what purports to be an Eritrean divorce decree, and its English translation, showing a date of divorce of November 12, 2013. The decree further notes that Abadi was ordered to announce the proceedings in a local newspaper and that such notice appeared in a certain newspaper on October 22, 2013. Carbonet-

---

1. Appellant's name appears in the record variously as Kidane Zewde and Zewde Kidane. It appears on his notice of appeal and his in brief as Kidane Zewde, so we will use that order in the heading of this opinion. However, during all transcribed proceedings before the trial court, he was referred to consistently as "Mr. Kidane." We will therefore refer to him as "Kidane" in the body of this opinion.

It appears that naming conventions in Kidane's native Eritrea do not coincide with standard western practices. See https://en.wikipedia.org/wiki/Naming_conventions_in_Ethiopia_and_Eritrea. Appellee, also a native of Eritrea, was consistently referred to as "Ms. Abadi" in the proceedings below, so we will refer to her in this opinion as "Abadi."

ti, however, failed to appear in court, and the decree was issued in his absence. Abadi testified that she believed herself to be properly divorced.

Kidane's counsel introduced an Italian court decree indicating that proceedings in Italy were ongoing in 2013.[2] Abadi testified that the Italian proceedings were for legal separation, not divorce, and that she sought a divorce in Eritrea because that is where they were married and she wanted the divorce decree to be in her own language.

Kidane's counsel also submitted a copy and a translation of the notice of the Eritrean proceedings published in an Eritrean newspaper. The notice advises that Carbonetti should appear at the court at 8 a.m. on November 13, 2013. The Eritrean divorce decree was granted on November 12, 2013. Neither side presented the trial court with any Italian or Eritrean marital law. At the conclusion of the first phase of the trial, the trial court denied Kidane's request that his marriage to Abadi be declared void.

The second phase of trial began on May 11, 2016. Although Kidane had set a motion to be heard that day Abadi's counsel and counsel for the Texas Attorney General's Office objected that they had not received proper notice.[3] The trial judge ruled that she was not going to entertain any motion that had not been properly served on all attorneys of record. Kidane made no response and did not object to the trial court's refusal to consider the motion. Abadi's counsel objected on hearsay grounds

to several of Kidane's proposed exhibits. Kidane again offered no argument in response. The trial court sustained the objections but also informed Kidane that the ruling would be reconsidered if he was able to lay a predicate for admission during trial.

Kidane called as his only witness Yohannes Ferede, who testified that he supervised Kidane's periods of possession of the couple's child. He stated that Abadi was always mean and unhappy at the exchanges, Kidane always had a happy demeanor, and the child was not happy to return to Abadi at the end of visitations. Ferede also described one particular exchange when he says that Abadi was abrasive and mad, "want[ed] to fight" Kidane, and tried to hit Kidane while Kidane was holding the child. Ferede said that he thought about calling the police but decided not to because it would cause "a big problem for her."

Abadi testified in her case-in-chief. She described Kidane during their marriage as "very aggressive, very cruel" and accused him of several bad acts, including keeping a camera in the house to watch her, "hacking" her phone, calling her names, at times preventing her from leaving a room or their home, threatening to kill her, and threatening to harm her other children. She further agreed that "there's been a history of family violence perpetrated by" Kidane. Abadi testified that the child has lived with her since her separation from Kidane, and she is the one who takes the child when he needs to see a doctor, buys

---

**2.** The 2013 decree is not a decree of divorce. Instead, it resolves a number of issues pertaining to Abadi and Carbonetti's separation, including possession of the child, child support, and damages. In one portion of the decree providing background information, it states that Abadi "wanted a judicial divorce," but shortly thereafter it states that the parties

sought a separation and that the court granted a separation.

**3.** The Attorney General's Office was a party at that time because of child support aspects of the case. Although the assistant attorney general participated in pretrial matters, he was released from the case after the parties reached a stipulation regarding child support.

his diapers and clothes, and plays with him. She further stated that she had not received any assistance from Kidane since their separation, and she requested the court order him to pay retroactive child support. Abadi additionally called her brother, Teklay Abadi, to testify. Teklay described an incident that occurred when he took his sister to collect her belongings from Kidane's house and Kidane threatened to kill "the whole family." Teklay described another incident at a restaurant where he says Kidane tried to fight him and made a threatening motion as though he was going to hit Teklay with a water bottle.

At the conclusion of the second phase of the bench trial, the trial judge named Abadi as the sole managing conservator of the child and Kidane as possessory conservator. Kidane was awarded limited possession rights until the child turned three years old, at which time a standard possession order would be in force. The judge further ordered Kidane to pay child support in the amount stipulated by the parties prior to trial, retroactive child support in the amount of $3332, and an additional monthly sum for medical expenses. The judge awarded each party the personal property he or she had in their possession and awarded to each the debt that was in their name.

## II. Granting of Divorce

In his first five issues, Kidane contests the trial court's granting of divorce. In issues one and five, he challenges the sufficiency of the evidence to support the trial court's determination regarding the validity of Kidane and Abadi's marriage. In issue two, he contends that the court erred in failing to consider his pretrial motion. In issue three, he asserts the trial court erred in excluding certain evidence. And in issue four, he complains that Abadi's counsel made misrepresentations to the trial court.

### A. Sufficiency of the Evidence on Divorce

In issues one and five, Kidane challenges the sufficiency of the evidence to support the trial court's determination regarding the validity of Kidane and Abadi's marriage. While it is clear in his brief that Kidane challenges the factual sufficiency of the evidence, it is not entirely clear whether he intended to challenge the legal sufficiency of the evidence; however, we will liberally construe his issues as challenging both the legal and factual sufficiency of the evidence. *See Wood v. City of Texas City*, No. 14-11-00979-CV, 2013 WL 440569, at *4 (Tex. App.—Houston [14th Dist.] Feb. 5, 2013, no pet.) (mem. op.). To successfully challenge the legal and factual sufficiency of the evidence on an issue on which he had the burden of proof, Kidane must show, respectively, that the evidence conclusively established the opposite of the trial court's finding or that the court's finding was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Bhatia v. Woodlands N. Houston Heart Ctr., PLLC*, 396 S.W.3d 658, 665 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

Every marriage entered into in the State of Texas, including Kidane and Abadi's, is presumed to be valid. *See* Tex. Fam. Code § 1.101; *In re Mabray*, 355 S.W.3d 16, 39 (Tex. App.—Houston [1st Dist.] 2010, orig. pet.). When a person is alleged to be married to more than one person, the most recent marriage is presumed valid against any prior marriage. *See* Tex. Fam. Code § 1.102. Accordingly, Kidane had the burden of proof to establish that his marriage to Abadi was invalid. *See, e.g., Nguyen v. Nguyen*, 355 S.W.3d

82, 90 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

We begin our analysis by noting that although it was not her burden to prove the validity of the marriage, Abadi introduced into evidence a purported copy of her Eritrean divorce decree and testified how and why she obtained the divorce. She further testified that she believed herself to be validly married to Kidane. Kidane did not plead or attempt to prove any Eritrean law; however, he did present certain evidence that he contends established that Abadi's divorce was fraudulently obtained. Kidane's evidence attempted to establish three things: (1) Italian court proceedings were ongoing when Abadi filed for divorce in Eritrea, (2) Abadi made false statements in her affidavit, and (3) the notice published in the Eritrean newspaper requested Carbonetti's appearance in court the day after the decree was granted.[4]

Kidane introduced an Italian court document indicating that proceedings in Italy were ongoing in February 2013. The document, however, does not suggest further proceedings were to be had in the Italian case after February, and Abadi did not file for divorce in Eritrea until the fall of that year. Abadi, in any event, testified that the Italian case was only for legal separation, not divorce, and indeed, that appears to have been its outcome. Moreover, since Kidane did not provide the court with any evidence regarding Eritrean or Italian law,

it cannot be ascertained whether the alleged pendency of the Italian proceedings would have presented any impediment to Abadi's filing for divorce in Eritrea, where she and Carbonetti were married. *See generally* Tex. R. Evid. 203 (providing that "a party who intends to raise an issue about a foreign country's law must ... at least 30 days before trial, supply all parties a copy of any written materials or sources the party intends to use to prove foreign law."); *Nguyen*, 355 S.W.3d at 89 ("The party relying on such foreign law must therefore strictly plead and prove the law.").

In her affidavit, which was filed with the Eritrean court, Abadi stated that she had not seen Carbonetti since he left their home in 2008; however, an Italian police report admitted into evidence recorded Abadi as saying that she saw Carbonetti at a women's shelter where she was staying in April 2009. Kidane argues that this discrepancy proves that Abadi obtained her divorce through fraud. But even assuming the statement in the affidavit was, in fact, inaccurate, it is impossible to tell based on the record before us what role, if any, the statement may have had in the granting of her request for a divorce. There is no indication in the record that the specific date Abadi last saw Carbonetti was integral to the Eritrean proceedings. The trial court therefore could have reasonably concluded that the discrepancy did not render the Eritrean divorce fraudulent.

4. Kidane makes other allegations in his brief, including that the Eritrean divorce decree contains fake Relative Arbitration Committee members and that Eritrean court employees acted fraudulently, but Kidane cites no evidence or law supporting these assertions, so these arguments are inadequately briefed and present nothing to review. *See* Tex. R. App. P. 38.1(i). Kidane also points out certain apparent inconsistencies in Abadi's testimony; however, as factfinder, the trial judge was sole judge of the witnesses' credibility and the weight to be given to their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005). In his brief, Kidane further provides allegations he says were made by Carbonetti, but Carbonetti did not testify at trial, and the trial court excluded his affidavit from evidence. Our sufficiency review is limited to the evidence admitted at trial. *See B.L.M. v. J.H.M., III*, No. 03-14-00050-CV, 2014 WL 3562559, at *13 (Tex. App.—Austin July 17, 2014, pet. denied) (mem. op.).

Lastly, Kidane introduced into evidence what he represented to be a copy and a translation of the notice of the Eritrean proceedings published in the Eritrean newspaper, which advised that Carbonetti should appear at the court at 8 a.m. on November 13, 2013, even though the Eritrean divorce decree was apparently granted the day before, on November 12, 2013. Once again, however, in the absence of any evidence or analysis of Eritrean law, it is impossible to determine why the notice and decree were done in this manner, much less to conclude that Abadi's divorce from Carbonetti was fraudulently obtained as a result.

Finding no merit in any of Kidane's arguments, we conclude that he has not shown that the evidence below conclusively established the opposite of the trial court's finding regarding the validity of the marriage or that the court's finding was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem.*, 46 S.W.3d at 241; *Bhatia*, 396 S.W.3d at 665. Accordingly, we overrule his first and fifth issues.

### B. Pretrial Motion

██ In issue two, Kidane contends the trial court erred in failing to consider a pretrial motion to dismiss in which he argued that Abadi had fraudulently obtained her Eritrean divorce from Carbonetti.[5] As set forth above, a hearing on this motion was set for the same day as the second phase of trial. The court sustained counsels' objections based on insufficient notice. The trial judge explained that she would not consider any motion not properly served on all of the attorneys in the case,

and Kidane did not offer any argument or proof that notice was given and did not object to the judge's refusal to rule on the motion.[6] The motion in the record contains a certificate of service signed by Kidane—in which he states that a copy of the motion was served on each attorney of record in the case—but the spaces provided on that page of the document for the time and date of the hearing are left blank.

In his appellate briefing, Kidane acknowledges that as a pro se litigant, he may have made "some technical error," but he insists that Abadi's counsel had all of the information she needed about the motion set for hearing. Under Rule 21 of the Texas Rules of Civil Procedure:

> An application to the court for an order and notice of any hearing thereon, not presented during a hearing or trial, shall be served upon all other parties not less than three days before the time specified for the hearing unless otherwise provided by these rules or shortened by the court.

Tex. R. Civ. P. 21(b); *see also In re Keck*, 329 S.W.3d 658, 661 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (reversing and remanding trial court's order because party did not receive notice three days before hearing as required by Rule 21). The record here does not reflect that either Abadi's counsel or the assistant attorney general received notice that Kidane's motion was set for hearing; in fact, both attorneys denied receiving such notice. Accordingly, the trial court did not err in refusing to consider the motion at that time. *See Keck*, 329 S.W.3d at 661.

---

5. Although styled a motion to dismiss, the motion was in essence requesting reconsideration of the judge's decision in phase one of the trial.

6. The trial court's docket sheet also reflects that the motion had not been properly served, that the attorneys in the case had not received proper notice of the motion, and that the court was "not granting leave to hear" the motion.

Kidane additionally argues that the trial court erred in not resetting the hearing for another day. However, he does not cite any place in the record, and we have not discovered any, where he made such a request to the trial court. Accordingly, he has not preserved that issue for appeal. *See* Tex. R. App. P. 33.1(a) (providing that to preserve a complaint for appellate review, a party must make a timely and sufficiently specific request, objection, or motion). Finding no merit in either of his arguments, we overrule Kidane's second issue.

### C. Exclusion of Evidence

■ In his third issue, Kidane contends that the trial court erred in excluding certain exhibits (P-6, P-7, P-8, P-9, and P-14) from evidence at trial.[7] We review a trial court's exclusion of evidence under an abuse of discretion standard. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). Kidane insists that the court should have admitted the exhibits because they were relevant to issues in the case. *See* Tex. R. Evid. 402 (providing that relevant evidence is admissible unless inadmissible under another rule or law).

As briefly mentioned above, Abadi's counsel objected to each of these exhibits as inadmissible hearsay, and the trial judge sustained the objections but informed Kidane that she would reconsider the ruling if Kidane was able to successfully lay a predicate for their admission. Kidane has not offered any argument—either in the trial court or on appeal—as to why the exhibits were not inadmissible hearsay, and he did not attempt to provide any predicate for their admission during trial. Kidane's sole argument on appeal is that the court erred in excluding the exhibits because they were relevant. This is not the law. Relevant evidence is admissible *unless it is inadmissible under the United States or Texas constitutions, an applicable statute, or another court rule. Id.; Juan A____ v. Dallas Cty. Child Welfare*, 726 S.W.2d 241, 245 (Tex. App.—Dallas 1987, no writ) (rejecting contention Rule 402 necessitated admission of relevant evidence that was inadmissible under another rule). Kidane does not address the trial court's stated reason for excluding the evidence—the hearsay rule. *See* Tex. Rule Evid. 803. Accordingly, Kidane's argument is without merit, and we overrule his third issue.

### D. Alleged Misrepresentations

■ In his fourth issue, Kidane contends that the trial court erred in considering alleged misrepresentations made by Abadi's counsel. The alleged misrepresentations include counsel stating (1) Abadi did not have counsel in the Italian case, when evidence suggested she may have had counsel in the Italian proceedings but not in the Eritrean proceedings; (2) in closing, that some meaning had been "lost in translation" during trial; and (3) also in closing, that the names of the parties were incorrect on a divorce decree.[8] Kidane,

---

7. Exhibit P-6 is an affidavit by Carbonetti. P-7 is an email providing specifics regarding Carbonetti's arrival at a Houston airport. P-8 is a photograph of Carbonetti, Carbonetti's son, and Kidane. P-9 appears to be a translation of a 2012 request to an Italian judge regarding the Carbonetti children's passports. P-14 is an unsigned letter from Kidane to the trial judge explaining why he was seeking custody of his child.

8. It is entirely possible that none of the complained of statements were actually misrepresentations. Regarding the first statement, Abadi may have had counsel at one point during the Italian proceedings but not during another point in the proceedings. Regarding the second statement, there was enough apparent confusion at trial involving the translator to justify counsel's opinion. Counsel's third statement concerned a court opinion in which

however, does not cite to any place in the record, and we have discovered none, where he objected in any manner to counsel's statements. Accordingly, these complaints were not preserved for appeal. *See* Tex. R. App. P. 33.1(a). We overrule Kidane's fourth issue.

### III.  Conservatorship

In issues six, seven, and eight, Kidane asserts that the trial court erred in naming Abadi as the child's sole managing conservator. We review managing conservatorship orders for abuse of discretion. *In re A.J.I.L.*, No. 14-16-00350-CV, 2016 WL 6110450, at *3 (Tex. App.—Houston [14th Dist.] Oct. 18, 2016, pet. denied) (mem. op.). The primary consideration for Texas courts in determining conservatorship issues is always the best interest of the child. Tex. Fam. Code § 153.002; *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000). Under the Texas Family Code, there is a presumption that the appointment of the parents as joint managing conservators is in the best interest of the child unless evidence is presented to rebut the presumption. *See* Tex. Fam. Code § 153.131(b); *In re Marriage of Butts*, 444 S.W.3d 147, 154 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The party seeking appointment as sole managing conservator has the burden to rebut the presumption. *Butts*, 444 S.W.3d at 154. When, as here, the parents do not file an agreed parenting plan, the Family Code specifies certain factors for the trial court to consider when assessing whether appointing the parents as joint managing conservators is in the best interest of the child. *See* Tex. Fam. Code § 153.134(a); *In re Butts*, 444 S.W.3d at 154. These factors are:

(1)  whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;

(2)  the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;

(3)  whether each parent can encourage and accept a positive relationship between the child and the other parent;

(4)  whether both parents participated in child rearing before the filing of the suit;

(5)  the geographical proximity of the parents' residences;

(6)  if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and

(7)  any other relevant factor.

Tex. Fam. Code § 153.134(a); *In re Butts*, 444 S.W.3d at 154-55.

There was significant evidence in this case of conflict and animosity between Abadi and Kidane. For example, Abadi testified that Kidane had acted cruelly toward her, including calling her names, at times preventing her from leaving a room or their home, threatening to kill her, and threatening to harm her other children. She also presented her brother's testimony, wherein he described an incident in which Kidane threatened to kill them. The trial court could have found from this evidence that it would be difficult for Abadi and Kidane to reach shared decisions in the child's best interest and encourage and accept a positive relationship between the child and the other parent and that the psychological or emotional needs and development of the child would not benefit from the appointment of them as joint managing conservators. Abadi further testified that she was the one who took care of the child, met the child's needs, and with whom the child had lived since birth.

a divorce decree contained inaccurate names    for the divorcing couple.

The record therefore contained at least some evidence supporting the trial court's implied finding that the presumption was rebutted and naming the parents as joint managing conservators was not in the child's best interest.[9] *See, e.g., In re Butts*, 444 S.W.3d at 155-56 (concluding there was some evidence to support appointment of sole managing conservator where evidence indicated a lack of communication between parents and that father had moved away and had not maintained a relationship with the child); *Martinez v. Molinar*, 953 S.W.2d 399, 402–03 (Tex. App.—El Paso 1997, no pet.) (concluding evidence supported appointment of sole managing conservator where evidence demonstrated communication problems and lack of agreement between the parents); *see also Berwick v. Wagner*, 509 S.W.3d 411, 433 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (explaining that analysis of whether appointment of one parent as sole managing conservator is in the child's best interest turned not on the parent's ability to parent individually, but instead on several statutory factors related to the parents' ability to effectively co-parent). The same evidence also supports the trial court's determination that naming Abadi instead of Kidane as sole managing conservator was in the child's best interest. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (identifying nonexclusive list of factors that may be considered in determining best interest).

In issue six, Kidane contends that "[t]he trial court considered improper factors in making its custody determination," but he does not cite any support for this assertion other than stating "the judgment was 100% appellee's relief requested." Kidane further cites a letter and accompanying photographs he presented to the trial judge as evidence supporting his request for primary custody of his son. However, neither the letter nor the photographs were admitted into evidence at trial, and we have overruled Kidane's third appellate issue complaining about their exclusion. Kidane also raises a number of concerns regarding the care of his child while in Abadi's custody. However, Kidane cites no evidence in support of these concerns and none was admitted at trial.

In issue seven, Kidane contends that the trial court erred in failing to consider what Kidane terms "domestic violence" committed in front of their child, citing Texas Family Code section 153.004 (addressing consideration of a history of family violence in appointing a party as sole or joint managing conservator). Section 153.004(a) of the Family Code requires the trial court to consider evidence of "the intentional use of abusive physical force by a party against the party's spouse" in determining whether to appoint a party as a managing conservator. *See Dewalt v. Dewalt*, No. 14-06-00938-CV, 2008 WL 1747481, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2008, no pet.). Although Kidane does not offer a record cite, he appears to be referencing Ferede's testimony that once during an exchange of the child, Abadi tried to hit Kidane while the child was in Kidane's arms. There is nothing in the record, however, to suggest that the trial judge failed to give this testimony due consideration. As factfinder, the judge was free to either disbelieve the testimony or assign it less weight than the evidence regarding Kidane's conduct discussed above. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005) (explaining factfinder is sole judge of witnesses' credibility and weight given to their testimony and may choose to believe one witness and disbelieve anoth-

---

9. The geographical proximity of Kidane and Abadi's residences does not appear to have been a factor addressed at trial. Because the child was less than two years old at the time of trial, the court was not required to take any preference the child might have into account.

er); *Zagorski v. Zagorski*, 116 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (explaining that reviewing court may not interfere with factfinder's resolution of conflicts in evidence or pass on weight or credibility of witnesses' testimony).

In his eighth issue, Kidane contends the trial court failed to consider the best interest of the child in making the conservatorship determination, citing Texas Family Code section 153.002. Kidane's argument consists primarily of a recitation of his virtues as a parent without appropriate citation to evidence challenging the trial court's conclusions. As discussed above, there was evidence supporting the trial court's determination that it is in the child's best interest to name Abadi sole managing conservator. *See In re Butts*, 444 S.W.3d at 155-56. Having considered all Kidane's conservatorship issues, we conclude the trial court did not abuse its discretion in awarding Abadi sole managing conservatorship of the child.

We overrule Kidane's issues six through eight. Having overruled all of Kidane's issues, we affirm the trial court's judgment.