**Affirmed and Memorandum Opinion filed October 10, 2023**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00853-CV

---

### ERNA ALETTA COX, Appellant

### V.

### KEVIN STUART COX, Appellee

---

**On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2015-42708**

---

## MEMORANDUM OPINION

Appellant Erna Aletta Cox (Mother) appeals the trial court's order modifying the parent-child relationship appointing her as possessory conservator of the children. Mother contends, among other things, that the trial court lacked jurisdiction and that the modified order was not in the best interest of the children. We affirm.

### *Background*

In April 2018, the trial court signed the Agreed Order in Suit Affecting Parent-

Child Relationship (the 2018 Order). Mother and appellee Kevin Stuart Cox (Father) were named joint managing conservators, and Mother was awarded the exclusive right to designate the children's primary residence within the Katy Independent School District. In May 2020, Mother filed a petition to modify requesting, among other things, that the geographic restriction expand to Harris County, counties contiguous to Harris County, and the entire country of Australia. In June 2020, Father filed a counterpetition requesting that he be awarded the exclusive right to designate the primary residence of the children and that the court determine whether there is a risk of international abduction of the children by Mother. In April 2021, the trial court signed the Order in Suit to Modify Parent-Child Relationship (the 2021 Order). The 2021 Order found that the 2018 Order naming Mother and Father as joint managing conservators was in the children's best interest. The trial court modified the guideline child support obligations but specifically denied Mother's request to alter the geographic restriction and Father's request to be appointed the conservator with the exclusive right to designate the primary residence.

In January 2022, Father filed an emergency petition to modify the 2018 Order alleging that the circumstances of the children and a conservator had materially and substantially changed. Father alleged that Mother had engaged in a history or pattern of child abuse and requested that he be appointed sole managing conservator, or alternatively, awarded the exclusive right to designate the primary residence of the children. In his supporting declaration, Father alleged that Mother repeatedly told him that she was "destitute of means" to provide for the children. Father believed that Mother was intentionally creating "desperate circumstances . . . [to] force a more desirable outcome." As an example of Mother's attempts to manipulate the court proceedings, Father referenced false reports made by Mother to the Department of Child Protective Services (CPS) accusing him of sexually abusing

2

the children. Father further alleged that Mother was sabotaging his employment "by sending repeated, harassing correspondence" to other employees and "posting factually inaccurate and disparaging allegations regarding [him] in a public forum."

A temporary orders hearing was conducted on January 18, 2022. During this hearing, Father testified that he overheard a phone call in which Mother told the children that she had moved back to Australia. Father asserted that Mother filed a letter with the court stating that she was "subject to a 10-year bar to entry into the United States" because she was "out of status." Mother appeared pro se and testified that she was currently residing in Australia because she "had to leave." According to Mother, she left for Australia on January 12, 2022 and could not lawfully reenter the United States for a ten-year period. At the conclusion of the temporary orders hearing, the trial court appointed Father as temporary sole managing conservator and awarded him the exclusive right to hold and apply for the children's passports. The trial court did not award Mother any periods of physical possession but found that Mother was entitled to reasonable periods of electronic access.

The trial court conducted a bench trial on the petition to modify on September 23, 2022. Both Father and Mother testified. Father testified that Mother had previously dropped the children off at his residence with several large bags of clothing, toys, and Mother's dog. Father was unaware that Mother planned to leave the United States due to her immigration status. A couple of weeks after leaving the United States, Mother told the children over the telephone that she was in Australia. Father also testified about CPS investigations that were initiated by Mother accusing him of sexually abusing the children. Each of the allegations was ruled out. According to Father, CPS investigators expressed concerns that Mother was manipulating and coaching the children to influence the investigation.

Mother testified that she never agreed to move to the United States

permanently. Mother alleged that she did not have support from Father after the parties divorced. As an example, Mother testified that Father would not provide living accommodations for her when she was evicted. Mother testified that she was unable to lawfully work in the United States because she did not have a work permit. She denied abandoning her children and explained that she decided to return to Australia where she had the support of the government and her family. Mother desired for the trial court to compel Father and the children to return to Australia.

At the conclusion of the trial, the trial court granted the petition to modify and signed an order on October 14, 2022. The trial court modified the 2018 Order and appointed Father as sole managing conservator and Mother as possessory conservator. Father was awarded, inter alia, the exclusive right to designate the primary residence of the children without a geographic restriction. This appeal followed.

## *Discussion*

Mother represented herself pro se in the trial court and continues to do so on appeal.[1] As presented, we interpret Mother's brief to raise four issues: (1) the trial court lacked jurisdiction to modify the 2018 Order, (2) the evidence was legally and factually insufficient to support the trial court's modification removing her as a joint managing conservator of the children, (3) the trial court's ruling was not in the best interest of the children, and (4) there was no evidence presented that Mother was an unfit parent. We turn to Mother's first issue raised on appeal.

---

[1] Although we liberally construe briefs and other filings that are submitted by pro se parties, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with all applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Rogers v. City of Houston*, 627 S.W.3d 777, 786 n.1 (Tex. App.—Houston [14th Dist.] 2021, no pet.). To allow different treatment for pro se litigants would provide them with an unfair advantage over litigants represented by counsel. *See Mansfield*, 573 S.W.2d at 185.

### *Jurisdiction*

In her first issue, Mother challenges the trial court's jurisdiction to modify the 2018 Order. In support of her position, Mother cites the Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA) and chapter 155 of the Texas Family Code. Father counters that the UCCJEA is inapplicable to this case, and under chapters 155 and 156, the trial court had continuing, exclusive jurisdiction to modify its order.

We begin our analysis by determining whether the UCCJEA is applicable to the facts presented in this case. The UCCJEA "was designed, in large part, to clarify and to unify the standards for courts' continuing and modification jurisdiction in interstate child-custody matters." *In re Forlenza*, 140 S.W.3d 373, 374 (Tex. 2004) (orig. proceeding). The Act attempts to deal with the problems of competing jurisdictions entering conflicting interstate child-custody orders, forum shopping, and the arduous child-custody legal proceedings encountered by parties where multiple states are involved. *See In re Dean*, 393 S.W.3d 741, 743 (Tex. 2012) (orig. proceeding). Under the Act, the jurisdiction of one state to modify the child-custody orders of another state is limited. *Id.*

In this case, the UCCJEA is inapplicable because the trial court did not modify a child-custody order of another state. *See* Tex. Fam. Code § 152.203 (providing that a Texas court possesses jurisdiction to modify orders from another state that affect the parent-child relationship when certain requirements are met). Rather, the trial court modified its own order. The trial court acquired continuing, exclusive jurisdiction upon entry of the 2018 Order and retained continuing, exclusive jurisdiction to modify the 2018 Order. *See id.* §§ 155.001–.003. Further, there is no evidence that the trial court lost its continuing, exclusive jurisdiction to modify its prior order. *See id.* § 155.004.

Even though Mother argues the UCCJEA is applicable because the parties and the children are Australian citizens, the children's country of origin is irrelevant. As stated, the trial court acquired continuing, exclusive jurisdiction upon rendition of the 2018 Order—a final order in a suit affecting the parent-child relationship. *Id.* § 155.001(a). Indeed, when Mother filed her petition in May 2020 to modify the 2018 Order, she correctly identified the trial court as the court with continuing, exclusive jurisdiction. Mother's subsequent move to Australia does not change the trial court's jurisdiction when Father and the children have continuously resided in Texas since 2013.

Having determined that the UCCJEA is inapplicable to this case, we turn to whether the trial court properly exercised jurisdiction under chapter 155. Under chapter 155, a court acquires continuing, exclusive jurisdiction in matters covered by Title 5 of the Family Code. *See* Tex. Fam. Code § 155.001(a); *see also In re Ron*, 582 S.W.3d 486, 491–92 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) ("This exclusive jurisdiction 'only affects jurisdiction in matters covered by Title 5 of the Family Code, Parent-Child Relationship.'") (quoting *In re H.E.L.*, No. 10-04-00204-CV, 2005 WL 170644, at *1 (Tex. App.—Waco Jan. 26, 2005, orig. proceeding) (mem. op.)). If a court has acquired continuing, exclusive jurisdiction, a court may exercise its jurisdiction to modify its order regarding managing conservator unless (1) the children's home state is not Texas or (2) a modification is precluded by chapter 152. Tex. Fam. Code § 155.003(b). Likewise, if a court has acquired continuing jurisdiction, no other court may modify possessory conservatorship or possession of or access to the children unless (1) the children's home state is not Texas and all parties have established and continue to maintain their principal residence outside of Texas, or (2) each individual party has filed written consent with the Texas tribunal for a tribunal of another state to modify the

6

order and assume continuing, exclusive jurisdiction of the suit. *Id.* § 155.003(c). Furthermore, a court may not exercise its continuing jurisdiction to modify its child support order if precluded by chapter 159 of the Family Code. *Id.* § 155.003(d). Under chapter 156 of the Family Code, "a court with continuing exclusive jurisdiction may modify an order that provides for the conservatorship, support, or possession and access to a child." *Id.* §156.001. A motion to modify the parent-child relationship is a suit affecting the parent-child relationship. *See id.* § 101.032(a) (defining "suit affecting the parent-child relationship").

On April 16, 2018, the trial court signed the 2018 Order. This was a final order, which appointed Mother and Father as joint managing conservators and determined the terms of possession, access, and support of the children. At the time of this order, the home state of the children was Texas. Thus, the trial court acquired continuing, exclusive jurisdiction of the suit and all of the parties, and no other court of this state has jurisdiction with regard to these children. *See id.* § 155.001(a), (c). As discussed, the trial court retained its continuing jurisdiction when Mother filed her petition to modify the 2018 Order. Subsequently, when Father filed his emergency petition in January 2022 to modify the 2018 Order, the trial court still retained jurisdiction of the suit and the parties. *See id.* § 155.002. We already established that the UCCJEA is inapplicable to this case, and there is no evidence that Texas is no longer the *children's* home state. Again, Mother's return to Australia during the pendency of the suit had no effect on the trial court's jurisdiction. *See id.* § 155.003(b), (c). Therefore, the trial court had jurisdiction to modify the 2018 Order. *See id.*

Accordingly, we overrule Mother's first issue.

### *Sufficiency of the Evidence/Best Interest*

In her second issue, Mother contends the evidence was legally and factually

insufficient to support the trial court's modification removing her as a joint managing conservator of the children. In her third issue, Mother argues that the trial court's ruling is not in the best interest of the children. In her fourth issue, Mother asserts that there was no evidence presented that she was an unfit parent. These issues raise similar arguments in that they challenge the trial court's determination of conservatorship. Accordingly, we analyze together Mother's second, third, and fourth issues.

In determining issues of conservatorship and possession and access, the primary consideration is always the best interest of the children. *See id.* § 153.002; *Brandon v. Rudisel*, 586 S.W.3d 94, 102 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (providing that the children's best interest holds paramount importance in making any custody call). When determining the children's best interest, Texas courts are to look to the following non-exhaustive list of factors: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by the individuals seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re H.D.C.*, 474 S.W.3d 758, 766–67 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

We review conservatorship determinations for abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Baltzer v. Medina*, 240 S.W.3d 469, 474–75 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Under this standard, a challenge to the legal or factual sufficiency of the evidence is not an independent ground of

error but may be a relevant consideration in assessing whether the trial court abused its discretion. *See Baltzer*, 240 S.W.3d at 475. "As conservatorship determinations are 'intensely fact driven,' the trial court is in the best position to 'observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences that cannot be discerned by merely reading the record.'" *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (quoting *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002)). Generally, a trial court abuses its discretion by acting arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Swaab v. Swaab*, 282 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2008, pet dism'd w.o.j.). We cannot interfere with the trial court's ruling so long as there is some evidence of a substantive and probative character to support its decision. *See In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

On appeal, Mother complains that the trial court: (1) "reduc[ed] [her] to supervised visitation" without clear and convincing evidence; (2) "violated [her] parental and human rights to custody and visitation by wrongful seizure/retention [and] geographically restricting out of status Australian children to move home to Australia with their biological mother"; (3) "stripped [her] custody rights due to her inability to reside in the United States"; and (4) failed to consider the children's "[c]ountry of [o]rigin" given Father's temporary work assignment. Mother's arguments, however, are not supported by the record.

In this case, Father testified that he had exclusive care, custody, and control of the children since late December 2021. Father explained that he had not planned on picking up the children until school resumed in January 2022. However, he received a text message from Mother stating that she was in his neighborhood. When Mother arrived, she dropped off the children, along with several large bags of clothing and toys, and left with the people that brought her. The children did not

9

testify nor did Father report any statements made by the children reflecting their desires, if any. Father, however, described the children's behavior after learning that Mother moved back to Australia. Father expressed that the children cried a lot, were "very sad for a number of days," and were angry and hurt. On cross-examination, Father asserted that the children were struggling emotionally because Mother left for Australia and "left them in America." In response to allegations that she abandoned the children, Mother testified that her circumstances in the United States had become "unattainable" because she did not have family, did not have a place to live, could not work in the United States, and did not have the support of the government. Mother acknowledged that she was unable to reenter the United States for a ten-year period.

Father also testified that it was not in the best interest for Mother to have the right of possession to the children because he was "fearful of another abduction." Father explained that in 2015, he came home one night to an empty house. He texted and called Mother but did not receive a response. Approximately "24 to 36 hours later," Father received correspondence from Mother stating that she and the children were in Australia. According to Father, it cost him well over a hundred thousand dollars and took him the better part of a year to get the children returned to the United States. In response to Father's testimony, Mother testified that she did not abduct her children. According to Mother, a week before she took the children to Australia, she discovered a "handwritten divorce document where [Father] was plotting and scheming." She told Father that their situation was not working, and mediation was necessary. Mother testified that she felt "more comfortable and safe[r]" doing so in Australia. The following week, Mother left for Australia with the children and claimed that Father knew where they were going.

The trial court also heard Father's testimony about how Mother's sexual abuse

10

allegations against him impacted the children. Even though Mother's allegations were ruled out by CPS investigators, Father still apologized to the children for being put through a traumatic experience. Father also described Mother's allegations that his employer was complicit in human trafficking. Father stated that he believed that Mother's behavior was a "deliberate attempt to make [him] unemployable" and "interfere with the [v]isa renewal process for [him] and [the children]." In response to Father's testimony, Mother suggested that her sexual abuse allegations against Father were facts. Mother also believed that Father's employer demonstrated "symptoms of human trafficking in the way that they have trafficked [her] and [the] children on a short-term work assignment" and had them "held hostage in the United States of America."

The balance of Father's and Mother's testimony relates to Mother's acts and omissions, the lack of stability in Mother's home, and Mother's inability to provide suitable housing for the children. Mother's testimony demonstrates the emotional and physical danger to the children now and in the future and the emotional and physical needs of the children now and in the future. Mother exhibited behavior reflective of an inability to give first priority to the welfare of the children and reach shared decisions in the children's best interest, i.e., dropping the children off with Father just days before school resumed knowing that she was leaving for Australia and likely could not reenter the United States for a ten-year period. Mother also demonstrated an inability to encourage and accept a positive relationship between the children and Father, i.e., making false complaints that Father sexually abused the children and engaging in behavior that jeopardized Father's employment.

Under the *Holley* factors, the record contains at least some evidence of a substantive and probative character to support the trial court's finding that removing Mother as joint managing conservator and naming Father as sole managing

11

conservator was in the children's best interest. *See Zewde v. Abadi*, 529 S.W.3d 189, 196–97 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Likewise, the record contains at least some evidence that denying Mother access to the children, or alternatively, ordering that her periods of visitation be continuously supervised was in the children's best interest.

To the extent Mother argues that the trial court was required to find by clear and convincing evidence that she was an "unfit parent" to remove her as a managing conservator of the children, such an argument is inconsistent with established law. *See* Tex. Fam. Code § 153.131(b) (providing that there is a rebuttable presumption that appointment of the parents as joint managing conservators is in the best interest of the children). There was evidence that Mother previously abducted the children, was a potential risk of international abduction, made false allegations that Father sexually abused the children, attempted to interfere with Father's employment, did not have a stable home, and could not lawfully reenter the United States before the children turned eighteen. The record, therefore, contained evidence supporting the trial court's implied finding that the presumption was rebutted and naming the parents as joint managing conservators was not in the children's best interest.

Accordingly, we overrule Mother's second, third, and fourth issues.

## *Conclusion*

We affirm the judgment of the trial court.

/s/ Frances Bourliot
Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.

12