**Affirmed in Part and Reversed and Remanded in Part and Opinion filed August 19, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00536-CV

## IN THE MATTER OF THE MARRIAGE OF ISIS SPENCER BUTTS AND RICKEY SHARNARD BUTTS

**On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Cause No. CV-27505**

## O P I N I O N

Appellant Rickey Butts brings this restricted appeal from the trial court's final decree of divorce. Rickey contends the evidence is insufficient to support the trial court's orders appointing appellee Isis Butts as sole managing conservator of the couple's child and awarding $800 per month in child support. Rickey also contends the judgment is void for vagueness. Because error is shown on the face of the appellate record, we affirm in part and reverse and remand in part for further proceedings.

## BACKGROUND

In 2002, Rickey and Isis were married and resided in Florida. Later that year, the couple had their only child, R.B. In 2011, Rickey and Isis stopped living together, and in 2012, Isis filed a petition for divorce in Texas. Rickey signed a waiver of service regarding the pending divorce case. In the waiver, Rickey listed his home address as Belle Glade, Florida. The waiver contains language indicating that by signing, Rickey enters an appearance as a substitute for going to court, "agrees that the court can make decisions in this case without further notice to [him]," and agrees that "the Judge . . . of the court may make decisions about [his] divorce." This waiver was filed with the court on October 24, 2012.

On December 19, 2012, a hearing was held in which Isis appeared pro se. Rickey did not appear. At the conclusion of the hearing, the trial court signed a final decree of divorce. The trial court also ordered that, and among other things, Isis was appointed the sole managing conservator of R.B. and Rickey was required to pay $800 a month in child support. On June 18, 2013, Rickey filed a notice of restricted appeal.

## ISSUES AND ANALYSIS

Rickey presents three issues on appeal: (1) the trial court abused its discretion in its child support determination because the evidence is legally and factually insufficient to support the determination; (2) the trial court abused its discretion in appointing Isis as the sole managing conservator because the evidence is legally and factually insufficient to support the appointment; and (3) the judgment of the trial court is void for vagueness. In response, Isis contends that Rickey has not met the requirements of a restricted appeal and, alternatively, that the trial court did not abuse its discretion and the judgment is not void.

2

## I.      Isis's Challenge to Rickey's Restricted Appeal

As a threshold matter, Isis urges that Rickey is not entitled to bring a restricted appeal because he cannot satisfy the requirements of a restricted appeal. To bring a restricted appeal, Rickey must establish that: (1) he filed notice of the restricted appeal within six months after the judgment was signed; (2) he was a party to the underlying lawsuit; (3) he did not participate in the hearing that resulted in the judgment complained of and did not timely file any post-judgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *See Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004). Isis challenges only elements three and four.

### A.      Failure to Participate in the Decision-Making Event

Isis contends that Rickey participated in the hearing resulting in the judgment because the "Waiver of Service" form Rickey signed is sufficient to constitute participation in the decision-making event. In the form, Rickey swore under oath that by signing, he was entering an appearance as a substitute for going to court. The form also included the following statements on which Isis relies: (1) "I have read the *Petition for Divorce* and understand what it says . . . ."; and (2) "I agree that a Judge, Associate Judge, or appointed Referee of the Court may make decisions about my divorce . . . ." Isis also argues that by signing the form, Rickey is estopped from denying his participation in the decision-making event. We address both of these arguments.

#### 1.      Rickey did not participate by signing the waiver of service.

When analyzing the third element of nonparticipation, the investigation turns on whether the appellant took part in the "decision-making event" that resulted in an adjudication of the appellant's rights. *Texaco, Inc. v. Cent. Power & Light Co.*,

3

925 S.W.2d 586, 589 (Tex. 1996). It is not necessary that an appellant attend the trial on the merits in order to be deemed as having taken part in a decision-making event. *Id.* Whether someone participated in the decision-making event is a matter of degree "because trial courts decide cases in a myriad of procedural settings." *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 129 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Texaco, Inc.*, 925 S.W.2d at 589); *see also Tramco Enters., Inc. v. Indep. Am. Sav. Ass'n*, 739 S.W.2d 944, 946 (Tex. App.—Fort Worth 1987, no writ) (stating that "the courts . . . have recognized that a large degree of participation is required before a party is denied appeal by writ of error").

The law is clear that signing a waiver of service alone is not sufficient to constitute participation for purposes of a restricted appeal. *See, e.g.*, *Stubbs v. Stubbs*, 685 S.W.2d 643, 645 (Tex. 1985); *Seymour v. Seymour*, No. 14-07-00280-CV, 2009 WL 442259, at *2 (Tex. App.—Houston [14th Dist.] Feb. 10, 2009) (mem. op.); *Campsey v. Campsey*, 111 S.W.3d 767, 771 (Tex. App.—Fort Worth 2003, no pet.). This is true even when the language of the waiver indicates that by signing, one is entering an appearance as a substitute for going to trial, giving a judge permission to make decisions in the case without further notice to the signor, and waiving the making of a record of testimony. *See Seymour*, 2009 WL 442259 at *1–2; *Campsey*, 111 S.W.3d at 769–71. Though the language in the form signed by Rickey may be broad, this court will treat the form as what it purports to be—a waiver of service. As such, we conclude that Rickey did not participate in the decision-making event by merely signing the form.

## 2. Rickey is not estopped from denying participation.

Isis also asserts that Rickey is judicially estopped from challenging the decisions made by the judge in his divorce action. Judicial estoppel "precludes a

4

party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008). The doctrine of judicial estoppel applies if all of the following elements are present: (1) a sworn, prior inconsistent statement made in a judicial proceeding; (2) the party now sought to be estopped successfully maintained the prior position; (3) the prior inconsistent statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear and unequivocal. *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 871 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 396 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.).

Isis claims that the waiver of service signed by Rickey—in which he agreed under oath that a judge may make decisions in the divorce action without further notice to him—is inconsistent with Rickey's appeal of the judge's decision. But, "[a]n appeal in the same case is not a 'subsequent action' to which judicial estoppel applies." *Graves v. Tomlinson*, 329 S.W.3d 128, 138 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Because Rickey is making an appeal in the same case in which the alleged prior inconsistent statement was made, the doctrine of judicial estoppel does not apply.

Nevertheless, Isis's brief may be fairly construed to include an argument that Rickey is equitably estopped from appealing because the language in the waiver of service is inconsistent with the requirement of nonparticipation in the decision-making event. *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").[1] We

---

[1] Although most of Isis's argument refers to the doctrine of judicial estoppel, Isis's brief also includes the following: "The doctrine of equitable estoppel exists to prevent the very conduct [Rickey] has displayed here . . . . The Court should hold that [Rickey] is estopped from

5

understand Isis's position to be that, having authorized the trial court to make decisions for him, Rickey cannot now deny the trial court's authority.

Isis argues that *Seymour*, on which Rickey relies, actually supports her position because in that case, this Court held that the appellant "acquiesced" to the divorce decree by signing a post-judgment motion to reinstate, effectively indicating her approval of the divorce decree's terms and precluding her restricted appeal. *See* 2009 WL 442259 at *2–3. But unlike the appellant in *Seymour*, Rickey took no additional actions after signing the waiver of service. As previously discussed, the signing of a waiver of service alone is insufficient to constitute participation in the decision-making event, even when that waiver contains language authorizing the judge to make decisions in the case. *See Seymour*, 2009 WL 442259 at *1–2; *Campsey*, 111 S.W.3d at 769–71. Because the record reflects no additional actions by Rickey that would rise to the level of participation at trial, Rickey is not equitably estopped from denying his participation.

Isis also argues that "[t]he restricted appeal is not a means to give a party who suffers a default judgment at his own hands another opportunity to have the merits of its case reviewed." As support for this proposition, Isis relies on *Classic Promotions, Inc. v. Shafer*, 846 S.W.2d 948, 951 (Tex. App.—Houston [14th Dist.] 1993, no writ), *abrogated by Texaco, Inc. v. Cent. Power & Light Co.*, 925 S.W.2d 586 (Tex. 1996), and *Flores v. H.E. Butt Grocery Co.*, 802 S.W.2d 53, 55 (Tex. App.—Corpus Christi 1990, no writ). However, in *Texaco*, the Supreme Court of Texas disapproved of *Classic Promotions* and other cases similarly holding that a restricted appeal is not available to a party that fails to exercise diligence and suffers a judgment because of its own actions. *See Texaco, Inc.*, 925 S.W.2d at

asserting that he did not participate in the decision-making event after having decided to ask the court to decide."

590. The Court held that a party seeking a restricted appeal was "not required to show diligence or lack of negligence before its complaints will be heard." *Id.* Guided by *Texaco*, we conclude that Rickey is not estopped from denying his participation at the decision-making event.

## B.  Error Apparent on the Face of the Record

Isis next contends that Rickey is not entitled to a restricted appeal because Rickey's challenges to the sufficiency of the evidence supporting the trial court's rulings rely on an *absence* of evidence, and that the absence of evidence is not error apparent on the face of the record. The authorities upon which Isis relies are distinguishable, however, because they involve complaints that a party did not receive notice of trial court proceedings, not complaints that the evidence is insufficient to support the judgment. *See Gold v. Gold*, 145 S.W.3d 212, 213 (Tex. 2004) (per curiam) (holding that failure of record to affirmatively show that notice of intent to dismiss was sent to a party was not error on the face of the record); *Alexander*, 134 S.W.3d at 849 (same).

For purposes of a restricted appeal, the face of the record concsists of "all the papers on file in the appeal," including the reporter's record. *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam). Because the scope of review in a restricted appeal is the same as in an ordinary appeal, an appellant may challenge the legal and factual sufficiency of the evidence. *Id.*; *see also Osteen v. Osteen*, 38 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that error was apparent on the face of the record after applying a legal sufficiency review to a divorce decree); *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 868 (Tex. App.—Dallas 2011, no pet.) (holding that error was apparent on the face of the record when record lacked evidence regarding obligor's net resources in child support determination). We therefore will address

Rickey's sufficiency challenges to determine whether there is error on the face of the record.

## II. Rickey's Issues on Appeal

### A. The Trial Court's Child Support and Conservatorship Orders

In his first two issues, Rickey contends that the trial court abused its discretion by requiring him to pay $800 per month in child support and appointing Isis as sole managing conservator because there is no evidence to support these rulings. The standard of review in both child support and managing conservatorship orders is abuse of discretion. *In re A.M.P.*, 368 S.W.3d 842, 846 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (child support); *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (conservatorship). Generally, a court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding principles. *In re R.T.K.*, 324 S.W.3d at 899. Legal and factual sufficiency challenges are not independent grounds of error; instead, they are factors to be considered in determining whether the trial court abused its discretion. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *Id.* at 900.

### 1. No evidence supports the trial court's child support order.

Rickey argues that the trial court abused its discretion in ordering him to pay $800 per month in child support because the record is devoid of any evidence of his net resources and the trial court made no findings to support a deviation from the Family Code's child support guidelines. Rickey requests that this court reverse the trial court's child support order and either render judgment awarding child support consistent with the guidelines or remand the issue for further proceedings.

Generally, child support is calculated by applying statutory guidelines to the obligor's monthly net resources. *See* Tex. Fam. Code §§ 154.062(a), 154.124. For one child, the guidelines provide that child support is to equal twenty percent of the obligor's net resources. *Id.* § 154.125(b). The trial court may deviate from the guidelines if evidence rebuts the presumption that application of the guidelines is in the best interest of the child. *Id.* § 154.123. If the guidelines are not followed, a trial court must make specific findings as to (1) the net resources of the obligor and the obligee, (2) the percentage applied to the obligor's net resources, and (3) if applicable, the specific reasons for the deviation from the guidelines. *Id.* § 154.130(a)(3), (b).

Absent evidence of the obligor's net resources, the trial court is required to presume that the obligor has wages or salary equal to the federal minimum wage for a forty-hour week. Act of April 6, 1995, 74th Leg., ch. 20, § 1, 1995 Tex. Gen. Laws 118, 161 (amended 2013) (current version at Tex. Fam. Code § 154.068); *Moreno v. Perez*, 363 S.W.3d 725, 736 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Based on the 2012 minimum-wage guidelines, Rickey calculates the applicable amount of child support to be less than $230 per month.

Isis argues that child support of $800 per month is justified because the record establishes that she had net resources of only $600 per month, Rickey was employed at the Butts Memorial Chapel, Rickey caused Isis to lose her car by ceasing to make payments on it, and Isis testified that $800 per month in child support would be in the best interest of the child. But Isis presented no evidence regarding Rickey's financial resources.

Absent evidence of Rickey's financial resources, the statutory presumption that Rickey earns the federal minimum wage for a forty-hour week applies. *See Moreno*, 363 S.W.3d at 736. Applying this presumption, the trial court's award of

$800 per month is much more than twenty percent of Rickey's presumed net resources. Assuming the trial court determined that the evidence supported deviating from the child support guidelines, the trial court was required to make the specific findings required by the Family Code. *See* Tex. Fam. Code § 154.130. However, the trial court did not make the required findings, either in writing or orally at the hearing.

We therefore hold that the trial court abused its discretion in ordering Rickey to pay $800 per month in child support in the absence of any evidence of Rickey's net resources and without making the statutorily mandated findings. *See Omodele v. Adams*, No. 14-01-00999-CV, 2003 WL 133602 at *4–5 (Tex. App.—Houston [14th Dist.] Jan. 16, 2003, no pet.) (mem. op.) (holding that in the absence of evidence of the obligor's net resources, the trial court abused its discretion by awarding child support in excess of the federal minimum wage presumption without making the findings required by § 154.130). We therefore sustain Rickey's first issue.

### 2. Some evidence supports appointment of Isis as sole managing conservator.

In his second point of error, Rickey argues that the trial court abused its discretion in awarding Isis sole managing conservatorship of their child because no evidence was presented to overcome the presumption that it is in the child's best interest to appoint both parents as joint managing conservators, and the trial court made no findings in connection with the conservatorship issue. Rickey requests that this Court reverse the trial court's conservatorship order and either render judgment that Rickey and Isis are joint managing conservators or remand for further proceedings.

In Texas, the primary consideration in determining conservatorship is the

10

best interest of the child. Tex. Fam. Code § 153.002; *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000).The trial court is required to presume that the appointment of the parents as joint managing conservators is in the best interest of the child until evidence is presented to rebut this presumption. *See* Tex. Fam. Code § 153.131(b). The party seeking appointment as sole managing conservator has the burden to rebut the presumption. *Lide v. Lide*, 116 S.W.3d 147, 152 (Tex. App.—El Paso 2003, no pet.).

When, as here, the parents do not file an agreed parenting plan, the trial court may render an order appointing the parents joint managing conservators only if the appointment is in the best interest of the child. *Id.* § 153.134(a). In making its determination, the trial court is to consider the following factors:

> (1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;
>
> (2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;
>
> (3) whether each parent can encourage and accept a positive relationship between the child and the other parent;
>
> (4) whether both parents participated in child rearing before the filing of the suit;
>
> (5) the geographical proximity of the parents' residences;
>
> (6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and
>
> (7) any other relevant factor.

*Id.* A finding of a history of family violence involving at least one of the parents of a child removes the presumption that a joint managing conservatorship is in the best interest of the child. *Id.* § 153.131(b).

The record establishes that Ricky and Isis were married in June 2002, and

11

R.B. was born in October 2002. Isis testified that she and Rickey stopped living together in April 2011, apparently when R.B. was eight years old. Isis and R.B. lived in Florida until April 9, 2012, when they moved to Texas. Rickey continued to live and work in Florida. Isis requested a divorce on the basis of irreconcilable differences and an award of $3,000 as "a fair and equitable division of the community property and debts." There is no evidence that Rickey has any continuing relationship with either Isis or R.B., and no evidence of R.B.'s relationship with either parent. There is also no evidence of R.B.'s physical health or emotional well-being. Nor is there any evidence of family violence, and at the time Isis sought the divorce from Rickey, she represented that there were no protective orders against either of them, and that neither had asked for one.

Isis also testified that one morning in December 2012, as she prepared to go to work, she discovered that the car Rickey had provided her was missing and, when she reported it stolen, she was informed by the police that the car had been repossessed because Rickey stopped making payments on it. Isis argues that the trial court could have presumed that Isis, as a single mother without financial support from Rickey, relied on the car to get to work, to take R.B. to school, and for transportation necessary for doctor's appointments, grocery shopping, and other errands. Isis also argues that Rickey declined to attend the hearing to determine conservatorship and instead left it to the trial court to decide. Isis contends the evidence demonstrates that R.B.'s physical health or emotional development would be harmed by Rickey's appointment as conservator and that this evidence is sufficient to overcome the presumption on which Rickey relies.

Neither party specifically discusses the statutory factors the trial court is to consider in determining whether joint conservatorship is in the child's best interest. From our review of the record, we find no evidence concerning whether R.B.

would benefit from joint managing conservatorship, whether Isis and Rickey could cooperate in making decisions for R.B., or whether either parent could promote a positive relationship with the other parent. Because Isis testified that she and Rickey lived together until 2011, there is some evidence that both parents participated in raising the child for at least eight years before Isis filed for divorce. But there is no evidence that Rickey has attempted to maintain any kind of relationship with R.B. after R.B. and Isis moved to Texas, and the trial court could have determined that Isis and Rickey no longer communicate with each other, based on Isis's testimony that she learned from the police, rather than Rickey, that Rickey was no longer making payments on the car.

Moreover, the fact that Rickey resides in Florida, several states away from Texas, is an important factor to consider in evaluating whether joint conservatorship is in the best interest of the child. *See In re Marriage of Bertram*, 981 S.W.2d 820, 825 (Tex. App.—Texarkana 1998, no pet.). Additionally, the fact that Rickey waived service and chose not to participate in the divorce proceedings in which conservatorship, as well as child support and other matters significant to the child's well-being, is some evidence that Rickey has little interest in maintaining any relationship with R.B. Likewise, Rickey's willingness to leave Isis, a single mother caring for her child on an income of $600 per month, without a means of transportation to get to work or to provide for the child's needs, is also some evidence that Rickey has little concern for R.B.'s welfare.

Accordingly, we conclude that there is some evidence to overcome the presumption that joint conservatorship is in the child's best interest, and therefore the trial court did not abuse its discretion in awarding Isis sole conservatorship of R.B. *See In re Marriage of Robinson*, 16 S.W.3d 451, 456 (Tex. App.—Waco 2000, no pet.) (holding that more than a scintilla of evidence existed to support the

finding that appointing father sole managing conservator was in the child's best interest, thus also rebutting the presumption in favor of appointing the parents as joint managing conservators). We therefore overrule Rickey's second issue.

### B. The Validity of the Final Decree of Divorce

In his third and final issue, Rickey asserts that the divorce decree is unintelligible and void. According to Rickey, the decree in this case was generated as a form document used in pro se divorces, and the form includes "Parenting Plan Exhibits" that are neither signed nor initialed by the trial court. Additionally, Rickey complains the trial court left blank the boxes to be checked to indicate which "exhibits" were included in the parenting plan—an omission Rickey contends is critical. Rickey relies on the following portion of the judgment:

> **VI. Parenting Plan:**
>
> The Court FINDS that the attached orders found in the Parenting Plan Exhibits are in the best interest of the children, and makes the following orders regarding custody, visitation, child support, and health insurance, as included in this section and the attached Parenting Plan Exhibits.
> . . .
> Parenting Plan Exhibits – The following Exhibits are attached to this Decree of Divorce and are made a part of this Decree for all purposes.
>
> ☐ Exhibit: Conservatorship (Custody) Order
>
> ☐ Exhibit: Rights and Duties Order
>
> ☐ Exhibit: Possession and Access (Visitation) Order
>
> ☐ Exhibit: Child Support Order
>
> ☐ Exhibit: Medical Support Order
>
> ☐ Exhibit: Family Information

As noted, none of the boxes are checked. Several pages later, just above where the trial court is to sign, the judgment states that "[a]ny orders requested that do not

14

appear above are denied."

Rickey asserts that because none of the above boxes were checked, the parenting plan orders attached to the divorce decree were never incorporated, and the only reasonable interpretation of the decree is that the trial court denied all of the relief requested in the parenting plan. Consequently, Rickey urges, the judgment is internally inconsistent, unintelligible, and fails to incorporate by reference the parenting plan. *See Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) ("A judgment must be sufficiently definite and certain to define and protect the rights of all litigants, or it should provide a definite means of ascertaining such rights, to the end that ministerial officers can carry the judgment into execution without ascertainment of facts not therein stated."); *see also Am. Cas. & Life Ins. Co. v. Boyd*, 394 S.W.2d 685, 688 (Tex. Civ. App.—Tyler 1965, no writ) (holding that an order purporting to both grant and deny a motion to dismiss was "utterly unintelligible on its face" and therefore of no legal force and effect). Further, Rickey argues that omission of the parenting plan leaves major and essential issues of the divorce wholly unresolved, citing Texas Family Code section 6.406 (providing that a suit for dissolution of a marriage must include a suit affecting the parent-child relationship). We disagree with Rickey's characterization of the trial court's order.

Each of the exhibits to the parenting plan are actually attached to the decree and have been completed to reflect the trial court's orders on each, including the orders on conservatorship and child support challenged in Rickey's first and second issues. Further, the parenting-plan portion of the decree does not instruct that some or all of the boxes must be checked for the orders to be effective. The decree does, however, reflect that "[t]he Court finds that the *attached orders* found in the Parenting Plan Exhibits are in the best interest of the children" and "are

15

attached to this Decree of Divorce and *are made a part of this Decree for all purposes*." (emphasis added). Consequently, the parenting plan exhibits attached to the divorce decree are incorporated for all purposes, are sufficiently definite and certain, and are neither internally inconsistent nor unintelligible such that major and essential issues relating to the divorce are left unresolved. *See Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003) (divorce decrees should be construed as a whole to harmonize and give effect to the entire decree). We therefore overrule Rickey's third issue.

## CONCLUSION

Rickey has demonstrated error on the face of the record concerning the trial court's order requiring Rickey to pay child support of $800 per month, and we therefore reverse that portion of the trial court's final decree of divorce and remand for further proceedings consistent with this opinion. We affirm the remainder of the judgment.


/s/     Ken Wise
        Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise.