

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-24-00191-CV

IN THE INTEREST OF E.K.H., A CHILD

On Appeal from 223rd District Court
Gray County, Texas
Trial Court No. 40,778, Honorable Jack Graham, Presiding

November 19, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

This appeal concerns the designation of conservatorship rights to a child, E.K.H.[1]

Though the Texas Department of Family and Protective Services initially sought

termination of Mother's and Father's parental rights, the case evolved into a

conservatorship dispute. After final hearing, the trial court appointed Father as E.K.H.'s

managing conservator and Mother as possessory conservator. In her sole issue on

appeal, Mother argues the trial court abused its discretion, contending the evidence failed

---

[1] To protect E.K.H.'s privacy, we will refer to K.R. as "Mother," N.H. as "Father," and the child, E.K.H., by initials. See TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

to overcome the statutory presumption favoring joint managing conservatorship. We disagree and affirm.

## Background

This case began in December 2022, when the Department received a report of neglectful supervision of E.K.H., who was one year old at the time. The report alleged that Mother had been incarcerated on charges of aggravated assault with a deadly weapon, theft, and child endangerment, and had left the child in another's care. That other caretaker, per the report, allegedly consumed alcohol, and marijuana in the child's presence.

This was far from Mother's first involvement with the Department. The evidence showed that between 2015 and 2022, the Department conducted seven investigations concerning the adequacy of Mother's care of her children. Most notably, in December 2017, both Mother and her newborn infant tested positive for methamphetamine. In December 2020, Mother's hair follicle test revealed amphetamines, MDMA/Ecstasy, cocaine, and cocaine metabolites, leading to her children's removal and placement with their father. Then in April 2022, while caring for E.K.H., Mother was arrested for child endangerment after law enforcement found the child's car seat "turned over." Rather than complete court-ordered services, however, Mother left the state. Mother's criminal history during the eight-year period before the present investigation involved multiple theft charges, probation violations, drug possession, and violent offenses, culminating in the aggravated assault charges that led to her eighteen-month incarceration beginning in December 2022.

The Department filed its petition to terminate parental rights in December 2022; E.K.H. was removed and the Department appointed her temporary sole managing conservator. At a January 2023 hearing, the trial court appointed both parents as possessory conservators with limited rights and ordered them to complete services. Over the next several months, Mother remained incarcerated, preventing her from having contact with E.K.H. Father, meanwhile, complied with his service plan and progressed from supervised visits to having E.K.H. placed in his home in July 2023.

According to permanency specialist Courtney Brown, E.K.H. was "doing very well" in his care. Brown testified that Father and E.K.H. had developed "very much a healthy parent/child relationship." Though Brown acknowledged Father had a history of domestic violence allegations involving his other children, she had witnessed no abuse toward E.K.H. or Father's live-in girlfriend. When the Department investigated one report about Father's physical discipline of E.K.H., it ultimately ruled out any abuse.

Mother was released from her 18-month incarceration in March 2024, approximately six weeks before final hearing. There was evidence at final hearing that Mother completed all services available to her while incarcerated. During those six weeks, Mother secured housing with her boyfriend (who is father to one of her children, but has a pending felony charge), obtained employment at an Amarillo hotel, began counseling, and participated in a domestic violence support group. Her weekly supervised visits with E.K.H. proceeded without incident, and both Brown and visitation supervisor Treesen Pierson noted no concerns. Brown testified she saw no reason why E.K.H. could not eventually be raised by both parents. However, given Mother's recent

3

release from prison, Brown testified she would first like to see Mother demonstrate more stability before being considered for joint managing conservatorship.

The Department recommended Father be named primary managing conservator and Mother possessory conservator with a stair-stepped visitation schedule. Both the guardian ad litem and CASA representative agreed, emphasizing E.K.H.'s stability in Father's care. The trial court signed an order consistent with these recommendations, appointing Father as permanent managing conservator and Mother as possessory conservator. The order established a step-up visitation schedule leading to Mother potentially obtaining standard possession by July 2024. The court found that "the circumstances of [E.K.H.], conservators or other party affected by the prior orders for conservatorship in this case have materially and substantially changed since rendition of the prior order, and that the appointment of [Father] as the sole managing conservator would be a positive improvement for the child."

**Analysis**

A trial court may appoint either a sole managing conservator or joint managing conservators. TEX. FAM. CODE ANN. § 153.005(a). The child's best interest is a trial court's primary consideration in determining issues of conservatorship and possession. *Id.* § 153.002. The law presumes that appointing parents as joint managing conservators serves the child's best interest, but this presumption is rebuttable. *Id.* § 153.131(b). We review conservatorship determinations for an abuse of discretion, meaning we will reverse only if the decision is arbitrary and unreasonable. *In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007). In conducting this review, we consider whether the trial court had

4

sufficient evidence[2] to exercise its discretion and whether it erred in applying that discretion. *In re L.T.,* No. 07-24-00002-CV, 2024 Tex. App. LEXIS 2986, at *6–7 (Tex. App.—Amarillo Apr. 30, 2024, no pet.) (mem. op.).

Through a single issue, Mother argues the trial court abused its discretion in appointing Father sole managing conservator rather than naming both parents joint managing conservators as presumptively favored by statute. Specifically, Mother argues there exists no material and substantial change of circumstances since the signing of a prior final order because no earlier order appears in the record. However, there is no final conservatorship order to modify because the order now on appeal is the only final conservatorship determination for E.K.H. and Mother and Father. *Cf. Crapps v. Crapps*, No. 12,478, 1976 Tex. App. LEXIS 3467, at *4 (Tex. Civ. App.—Austin Dec. 22, 1976, no writ) (not designated for publication) (modification requires a prior final order, not temporary orders).

Mother further contends there exists no evidence showing that Father's appointment as E.K.H.'s sole managing conservator would be a positive improvement. We assess that argument as a part of considering whether the appointment is in the best interest of the child.

---

[2] The standards for assessing the legal and factual sufficiency of the evidence are well established and need not be restated here. *See In re L.A.M.,* No. 07-21-00124-CV, 2022 Tex. App. LEXIS 3515, at *11–12 (Tex. App.—Amarillo May 24, 2022, no pet.) (mem. op.) (discussing the standards).

When, as here, there is no evidence of an agreed parenting plan,[3] the court may appoint the parents joint managing conservators only if the appointment is in the child's best interest, considering the following factors:

> (1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;
>
> (2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;
>
> (3) whether each parent can encourage and accept a positive relationship between the child and the other parent;
>
> (4) whether both parents participated in child rearing before the filing of the suit;
>
> (5) the geographical proximity of the parents' residences;
>
> (6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and
>
> (7) any other relevant factor.

TEX. FAM. CODE ANN. § 153.134(a).

The evidence supports the trial court's decision to name Father as a managing conservator. Stability and permanence are paramount in raising children. *In re K.O.*, No. 07-23-00440-CV, 2024 Tex. App. LEXIS 4561, at *17 (Tex. App.—Amarillo June 26, 2024, no pet.) (mem. op.). E.K.H. has lived stably with Father for nearly a year, forming what witnesses described as a healthy parent-child bond.

---

[3] *See* TEX. FAM. CODE ANN. § 153.133(a).

6

Mother contends the evidence fails to show that naming her a joint managing conservator would significantly impair E.K.H.'s physical health or emotional development. She relies on Family Code section 153.131(a), which requires such a showing before denying a parent managing conservator status. But section 153.131(a) applies only when no parent is named managing conservator. *See In re C.D.*, No. 04-19-00866-CV, 2020 Tex. App. LEXIS 4115, at *6–8 (Tex. App.—San Antonio June 3, 2020, no pet.) (mem. op.).[4] Here, where Father is managing conservator, section 153.131(b)'s rebuttable presumption favoring joint managing conservatorship controls. This presumption is overcome by considering the factors in section 153.134(a), not by proof of significant impairment under section 153.131. *Id.*

On appeal, Mother does not discuss section 153.134(a)'s factors. In contrast to the evidence indicating a flourishing relationship between the child and Father, the evidence of Mother's recent release from an 18-month incarceration could give a reasonable factfinder concerns about parenting stability. While she made commendable progress in the six weeks before trial—securing housing, employment, and beginning services—this brief period must be juxtaposed against Mother's extensive history of criminal charges, incarceration for the majority of E.K.H's life, and prior Department involvement. The evidence provides a historical context permitting the trial court, as factfinder, to reasonably conclude more time was needed to demonstrate Mother's lasting stability as a responsible parent.

---

[4] *See also In re A.C.D.,* No. 05-16-00779-CV, 2016 Tex. App. LEXIS 11946 (Tex. App.—Dallas Nov. 3, 2016, no pet.) (mem. op.); *In re Marriage of Butts,* 444 S.W.3d 147, 155–56 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Within the context of describing how past decisions can forecast future parenting skills, this Court has noted that "oftentimes, past is prologue." *In re A.M.,* Nos. 07-18-00047-CV, 07-18-00048-CV, 2018 Tex. App. LEXIS 3688, at *7 (Tex. App.—Amarillo May 23, 2018, pet. denied) (per curiam) (mem. op.). The trial court's order, however, provides Mother the opportunity to write a different future by preserving her relationship with E.K.H. through a step-up visitation schedule that may lead to standard possession. This arrangement thoughtfully balances E.K.H.'s need for stability with Mother's opportunity to demonstrate sustained progress and gradually expand her role in her daughter's life.

## Conclusion

We conclude the trial court did not abuse its discretion. We overrule Mother's issue and affirm the trial court's order.

Lawrence M. Doss
Justice

8